LEE, Appellant,

v.

UNITED CHURCH HOMES, INC., d.b.a. Fairhaven Retirement
& Health Care Community et al., Appellees.

[Cite as *Lee v. United Church Homes, Inc.* (1996), 115 Ohio App.3d 705.]

Court of Appeals of Ohio,
Third District, Wyandot County.

No. 16–96–06.

Decided Nov. 20, 1996.

*Timothy A. Shimko & Assoc.* and *Timothy A. Shimko*, for appellant.

*Roth, Bacon, Young, Kenneth L. Young* and *Jonathan K. Miller*, for appellee United Church Homes, Inc.

*Thompson, Hine & Flory, P.L.L.*, and *Earle Jay Maiman*, for appellee Westhaven Services Company.

THOMAS F. BRYANT, Judge.

This is an appeal by Marjorie Lee from a judgment of the Wyandot County Court of Common Pleas granting summary judgment in favor of United Church Homes and Westhaven Services Company on appellant's claims of antitrust violations and violations of the Ohio Nursing Home Residents' Rights Act.

In April 1994, Marjorie Lee was admitted to Fairhaven Retirement & Health Care Community ("Fairhaven"), a nursing home operated by appellee United Church Homes. At the time, Fairhaven was under a contract with appellee Westhaven Services Company, a.k.a. Westhaven Pharmacy ("Westhaven"), to purchase prescription medications for the home's residents. The contract provided that Fairhaven "shall, whenever possible, use the Pharmacy herein [Westhaven] as vendor for prescription medications." While such a contractual relationship existed, Fairhaven recognized the resident's rights to choose their own provider in the pharmacy services agreement signed by each resident. In fact,

eight Fairhaven residents purchase their medications from providers other than Westhaven.

At the time of her admission, Lee was assisted by her brother, Richard Curlis. As his sister's attorney in fact, Curlis met with Fairhaven personnel and filled out paperwork to facilitate the admission process. Curlis claims that during this admission process, he was specifically informed that Westhaven was the only approved pharmacy recognized by the nursing home. Furthermore, in his affidavit, Curlis stated that when he filled out a document regarding pharmacy services, the chosen pharmacy section was already filled in with Westhaven's name.

On February 20, 1996, plaintiff filed a complaint against defendants for violations of the Valentine Antitrust Act, R.C. 1331.01 *et seq.*, and the Nursing Home Residents' Rights Act ("Residents' Rights Act"), R.C. 3721.10 *et seq.* Plaintiff alleges that Westhaven and Fairhaven entered into an exclusive supply contract to meet the pharmaceutical needs of Fairhaven residents. This contract, plaintiff alleged, violates Ohio's antitrust laws. Because of the exclusive supply arrangement, plaintiff claimed that Fairhaven personnel improperly coerced incoming residents to choose Westhaven's services. In support of this claim, plaintiff argued that Curlis was informed that Westhaven was the only approved pharmacy and that plaintiff's admittance into Fairhaven's facility was conditioned upon her agreement to purchase medication from Westhaven.

Plaintiff argued that the agreement between Fairhaven and Westhaven denied residents the right to purchase their medications from competitively priced pharmacies and required them to pay supra-competitive prices. Specifically, plaintiff argued that the Westhaven prices charged to the residents exceeded, by four to five times, the prices available for the same medications from local retail pharmacies. Therefore, plaintiff contended, that the agreement violates the antitrust laws of Ohio and the Residents' Rights Act.

In March 1996, defendants Fairhaven and Westhaven filed motions for summary judgment. Defendants argued that the contract between Fairhaven and Westhaven is not an exclusive supply arrangement. In fact, defendants claimed that the language of the contract specifies that Fairhaven and its residents reserve the right to purchase prescription medications from other sources. Furthermore, defendants denied the allegation that resident admission was conditioned upon the acquiescence to a requirement that residents purchase all of their pharmaceuticals from Westhaven. In support of this position, defendants offered the affidavit of Sandy Metcalf, the Fairhaven representative who processed Lee's admission. Metcalf stated that she informed Curlis that Fairhaven recognizes the residents' right to choose their own pharmacy, provided that pharmacy comports with state and federal regulations. Metcalf further stated

that Curlis signed an acknowledgment of this right and voluntarily chose Westhaven to provide pharmacy services for his sister.

The trial court considered defendants' motions for summary judgment at an oral hearing on May 28, 1996. On June 21, 1996, the trial court issued its judgment entry granting summary judgment in favor of Westhaven and Fairhaven. It is from this judgment that plaintiff asserts the following assignment of error:

"The trial court erred when it granted summary judgment in favor of defendants United Church Homes, Inc., and Westhaven Services Company."

The standard for determining when a motion for summary judgment is properly granted pursuant to Civ.R. 56(C) is set forth in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, which states:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. In addition, a motion for summary judgment forces the nonmoving party to produce evidence on any issue (1) for which that party bears the burden of production at trial, and (2) for which the moving party has met its initial burden. See *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 623 N.E.2d 591, and *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

To determine whether summary judgment was properly granted, we must evaluate whether genuine issues of material fact existed for plaintiff's claims against each of the defendants. We will therefore separately examine plaintiff's claims under the Valentine Act and the Ohio Nursing Home Residents' Rights Act as they pertain to defendants Fairhaven, and Westhaven.

*I Antitrust claims*

Ohio's Valentine Act, contained in R.C. Chapter 1331, was patterned after the Sherman Antitrust Act and, as a consequence, must be interpreted in light of federal construction of the Sherman Act. See *C.K. & J.K., Inc. v. Fairview*

*Shopping Ctr. Corp.* (1980), 63 Ohio St.2d 201, 204, 17 O.O.3d 124, 126, 407 N.E.2d 507, 509. The Valentine Act forbids transactions "which * * * restrict production for the sole purpose of enhancing price, stifling competition, or creating a 'corner,' fixing prices at a definite standard, or combining in a manner that has a necessary tendency to oppress competitors or the public." *List v. Burley Tobacco Growers' Co-op. Assn.* (1926), 114 Ohio St. 361, 378, 151 N.E. 471, 476.

■ The plain language of the Valentine Act prohibits any agreement or combination that would "create or carry out restrictions in trade or commerce." R.C. 1331.01(B)(1). However, following the "rule of reason" established by federal courts interpreting the Sherman Act, Ohio courts reject a strict interpretation of the Act and condemn only those transactions which are unreasonable because of their effect on the public interest. *List, supra.* Therefore, if contracts which impose some restraint on trade are incident and ancillary to some lawful business and are not unreasonable in their scope and operation, they are not illegal unless the restraint is contrary to the public interest. *C.K. & J.K., Inc. v. Fairview Shopping Ctr., supra;* see, also, 88 Ohio Jurisprudence 3d (1989) 369, 371, Trade Regulation, Section 13.

In its motion for summary judgment, defendant Westhaven argued that its contract with Fairhaven does not violate the Valentine Act. In the contract, Fairhaven agrees to utilize the pharmaceutical services of Westhaven "whenever possible." Furthermore, the contract specifies that "[t]he Center [Fairhaven] and its residents therein reserve the right to purchase and obtain prescription medications and supplies from other sources, in accordance with all Center policies regarding purchases from an outside pharmacy." Because this contract is not an exclusive supply agreement and specifically recognizes the residents' right to choose alternative pharmacies, Westhaven argues in this court that there is no unreasonable restraint of trade. Therefore, it contends, summary judgment was appropriate.

In *Acme Wrecking Co., Inc. v. O'Rourke Const. Co.* (Mar. 1, 1995), Hamilton App. No. C–930856, unreported, 1995 WL 84188, the First District Court of Appeals considered a similar case in which a private plaintiff was claiming injury under the Valentine Act. The court examined the federal interpretation of the Sherman Act and held:

"A private plaintiff may not recover damages under this section merely by showing 'injury causally linked to an illegal presence in the market.' *Atlantic Richfield Co. v. USA Petroleum Co.* (1990), 495 U.S. 328, 334, 110 S.Ct. 1884, 1889 [109 L.Ed.2d 333, 343], quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.* (1977), 429 U.S. 477, 489, 97 S.Ct. 690, 697 [50 L.Ed.2d 701, 712]. 'Instead, a plaintiff must prove the existence of *antitrust* injury, which is to say injury of the

type the antitrust laws intended to prevent and that flows from that which makes defendants' acts unlawful.' *Id.* (emphasis in original). The antitrust-injury requirement 'ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior.' *Atlantic Richfield Co.*, 495 U.S. at 344, 110 S.Ct. at 1894 [109 L.Ed.2d at 350] (emphasis in original)."

▇ In the present case, Marjorie Lee has failed to demonstrate that she suffered any antitrust injury. While plaintiff may have paid higher prices for the medication obtained from Westhaven than she would have paid through local retail pharmacies, her claim does not fall under the Valentine Act. There has been no showing that the pharmacy agreement between Westhaven and Fairhaven reduced competition, since the contract specifically recognizes the residents' rights to choose alternative pharmacies and only encourages use of Westhaven services "whenever possible." In fact, other pharmacies are permitted to service the pharmaceutical needs of Fairhaven residents, as long as these pharmacies comport with the various state and federal regulations pertaining to the administration of medication to nursing home residents.[1] It is likely that these regulations, not the contract between Westhaven and Fairhaven, contribute to the increased prices and decreased competition.

Thus, since plaintiff's alleged loss does not stem from a competition-reducing aspect or effect of defendants' behavior, defendants were entitled to judgment as a matter of law. Accordingly, we affirm the trial court's granting of summary judgment in favor of defendants on plaintiff's antitrust claims.

## II Residents' rights claims

In addition to her claim of antitrust violations, plaintiff also brought suit against defendants for violation of R.C. 3721.13(A)(14). This section provides:

"(A) The rights of residents of a home shall include, but are not limited to, the following:

" * * *

"(14) The right to the pharmacist of the resident's choice and the right to receive pharmaceutical supplies and services at reasonable prices not exceeding

---

1. Federal law requires nursing homes to either provide, or arrange for the provision of, pharmaceutical services to meet the needs of each resident. These services must utilize procedures that "assure the accurate acquiring, receiving, dispensing and administering of all drugs and biologicals." Section 1396r(b)(4)(A)(iii), Title 42, U.S.Code. See, also, Section 483.60, Title 42, C.F.R. Westhaven provides the federally mandated services not available in most local retail pharmacies including, *inter alia,* hermetically sealed unit dose packaging, twenty-four-hour, on-call pharmacists, and monthly drug regimen review.

applicable and normally accepted prices for comparably packaged pharmaceutical supplies and services within the community."

Plaintiff argues that while the pharmacy services agreement signed by Richard Curlis purports to give residents a choice of pharmacies, the actual practices of Fairhaven deny residents this right. Plaintiff contends that because of the contract between Westhaven and Fairhaven, Fairhaven personnel coerced incoming residents, specifically Marjorie Lee, to select Westhaven as their chosen pharmacy, in contravention of the resident's statutorily guaranteed rights.

■ After a thorough review of the record, we find that summary judgment was properly granted as to defendant Westhaven on plaintiff's residents' rights claim. Neither Marjorie Lee nor Richard Curlis had any contact with Westhaven or its representatives. Furthermore, there is no evidence that Westhaven improperly coerced Fairhaven residents to select its pharmaceutical services. In fact, its contract with Fairhaven specifically recognized the residents' right to select a pharmacy of their own choice. Consequently, reasonable minds can only conclude that defendant Westhaven did not act to deny Lee any right guaranteed by R.C. 3721.13.

■ As to plaintiff's claim against Fairhaven, we find that genuine issues of material fact do exist regarding what was explained by Sandy Metcalf when she and Curlis discussed selecting a pharmacy. In his affidavit, Curlis stated:

"6. I was told * * * during the interview process with the Fairhaven personnel that Westhaven was the only approved pharmacy recognized by Fairhaven Community. Moreover, the Pharmacy Services document was handed to me with the chosen pharmacy section already filled out with the name of Westhaven. I did not write in the name of Westhaven.

"7. At no time was I given the opportunity to suggest another pharmaceutical alternative, nor was I provided with the name of any other pharmacy supplier."

In addition, plaintiff submitted the affidavit of her son, James Pry, who stated:

"4. During the interview process with Fairhaven personnel, I was present with my mother who signed a Pharmacy Service[s] form prepared by Sandy Metcalf. I reviewed the pharmacy service record and at that time, I made the stipulation that the charges must be reasonable and that my brother and I were to receive copies of all the medications and costs.

"5. I questioned the use of other pharmacies; however, I was told at that time that Westhaven Pharmacy was the only approved pharmacy and that they had a special arrangement with them. At that time, I had no other choice but to ask my mother to sign this document in my presence. Neither my mother nor I wrote in the name Westhaven.

"6. I questioned whether we could use The Medicine Shoppe or other pharmacies which we used in the past and I was told that no other pharmacy was approved by Fairhaven."

In response to plaintiff's allegation, defendant Fairhaven submitted the affidavit of Sandy Metcalf. In her affidavit, Metcalf states, "At no time did Richard Curlis question me as to the pharmacy provider sections of [the Residents' Rights Act] document." Furthermore, Metcalf states, "Any statement which recites that I in any manner attempted to influence Marjorie Lee and or her representative's selection of a pharmaceutical provider is a falsehood and incapable of being proven because it did not occur."

Since the affidavits of Richard Curlis, James Pry, and Sandy Metcalf are in direct contravention, genuine issues of material fact existed, thereby making summary judgment improper. We therefore sustain appellant's assignment of error as to defendant Fairhaven. Accordingly, we affirm in part and reverse in part the judgment of the Wyandot County Court of Common Pleas.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HADLEY, P.J., and SHAW, J., concur.