**JOHNSON, Appellant,**

**v.**

**MICROSOFT CORPORATION, Appellee.**

[Cite as *Johnson v. Microsoft Corp.,* 156 Ohio App.3d 249, 2004-Ohio-761.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020564.

Decided Feb. 20, 2004.

Stanley M. Chesley, Robert Heuck II, W. B. Markovits and Michael R. Barrett, for appellant.

Gregory A. Harrison and John D. Luken, for appellee.

GORMAN, Judge.

{¶ 1} The plaintiff-appellant, Maria Johnson, has moved this court to reconsider its decision issued on December 30, 2003. By a two-to-one vote, the panel affirmed the trial court's dismissal under Civ.R. 12(B)(6) of Johnson's claims alleging that Microsoft had unfairly controlled competition and charged a monopoly price for its Windows operating system. Johnson's complaint included a common-law claim for restitution, damage claims for violations of Ohio's Valentine Act, R.C. 1331.01, and a claim for a violation of the Ohio Consumer Sales Practices Act, R.C. 1345.02 and 1345.03. Johnson brought her claims on behalf of a putative class consisting of all those who had accepted Microsoft's on-screen licensing agreement ("EULA") to use any version of the Microsoft Windows operating system within four years of her filing of the complaint.

{¶ 2} Central to Johnson's motion for reconsideration is the rule of statutory construction the majority applied to Ohio's Valentine Act. In her view, the majority erred by failing to hold that Ohio's Valentine Act was not subject to

the same "direct-purchaser" requirement that the United States Supreme Court has held applicable to federal antitrust laws. As discussed in the majority opinion, the direct-purchaser requirement arose out the United States Supreme Court's decision in *Illinois Brick Co. v. Illinois* (1977), 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707. In *Illinois Brick*, the court determined that indirect purchasers, meaning those who bought products from middlemen rather than the alleged monopolists, did not suffer an injury within the scope of the Clayton Act and therefore lacked standing to sue. Underlying the court's holding was its view that if indirect purchasers were considered among those injured under the Clayton Act, the calculation of damages would become subject to the debilitating vagaries of "pass-on" theories to decide what damages were due the middlemen and consumers, respectively. As discussed in our previous decision, the court felt that such dispersion of damages, even if properly accomplished, would blunt the force of federal antitrust laws and lessen the incentive to sue for such a diluted individual recovery. Id., 431 U.S. at 745–746, 97 S.Ct. 2061, 52 L.Ed.2d 707.

{¶ 3} The United States Supreme Court subsequently held that *Illinois Brick*'s direct-purchaser requirement was not binding upon state antitrust laws. *California v. ARC Am. Corp.* (1989), 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86. Nonetheless, as we noted in our decision, the vast majority of states that have considered the issue have adopted the direct-purchaser requirement as part of their states' versions of the Valentine Act. Of those states that do allow some form of indirect action, the overwhelming majority of those (23 out of 26, including the District of Columbia) do so only because the legislatures have chosen to enact some form of *Illinois Brick* repealer statute.

{¶ 4} Despite this profusion of authority to the contrary, Johnson argues that the majority erred and that we should disregard *Illinois Brick*'s direct-purchaser requirement as merely an anomaly of federal law that was never contemplated by the Ohio General Assembly when it passed the Valentine Act over a century ago. Indeed, Johnson goes so far as to contend that the only federal decisional law that has any relevance to Ohio's Valentine Act is that which was extant at the time of its enactment.

{¶ 5} The problem with this argument, however, is that, as even the dissent conceded in our earlier decision, "[t]he weight of authority does indeed provide that the Ohio Valentine Act is to be interpreted consistently with federal antitrust law." This principle redounds from the Ohio Supreme Court's pronouncement in *C.K. & J.K., Inc. v. Fairview Shopping Ctr.* (1980), 63 Ohio St.2d 201, 204, 17 O.O.3d 124, 407 N.E.2d 507, that the Valentine Act is "patterned" after the Sherman Antitrust Act "and as a consequence this court has interpreted the statutory language in light of federal judicial construction of the Sherman Act * * *." In other words, the Ohio Supreme Court, the ultimate authority on

statutory construction in this state, has determined that the Ohio legislature intended to "pattern" its antitrust law upon federal antitrust law, and consequently, the court has interpreted the Valentine Act in a manner generally, if not necessarily, consistent with "federal judicial construction."

{¶ 6} Johnson challenges this logic as a total subjugation of Ohio law to the decision-making of federal judges and suggests that such an approach creates an impasse when there is a split of federal authority. While this argument may have merit in other cases concerning other issues, it is not persuasive here, where there is no split of authority among inferior federal courts, but an unequivocal holding of the United States Supreme Court. No less an authority than the highest court in the land has held that an indirect purchaser is not an injured party under federal antitrust law. The Ohio Supreme Court, in turn, has held that, in the area of antitrust laws, the Ohio General Assembly intended to "pattern" Ohio's Valentine Act upon federal antitrust law. This being so, only one conclusion can be reached, unless one is willing to distort the meaning of a "pattern" to include an entire set of plaintiffs who are deemed to suffer no injury and have no standing under federal law.

{¶ 7} Johnson says that it is illogical to defer to the Ohio Supreme Court's view of the Valentine Act, which interprets the statute "in light of federal judicial construction of the Sherman Act," and yet to recognize that the General Assembly has the ultimate authority to accept or reject the direct-purchaser requirement of *Illinois Brick.* We see no contradiction whatsoever. Typically, legislatures make laws and the judicial branch interprets them. If the General Assembly disagrees with judicial interpretation, it is at liberty to take corrective legislative action, as have 23 other states, including the District of Columbia, that have enacted *Illinois Brick* repealer statutes.

{¶ 8} Although four states have chosen not to incorporate the direct-purchaser requirement of *Illinois Brick,* they have done so for reasons unique to those jurisdictions, and none has done so in contradiction of their highest court's determination that their state's versions of the Valentine Act should be interpreted "in light of federal judicial construction of the Sherman Act." This is not a case of "blindly" following federal precedent but one of abiding by the principle of construction established by the Ohio Supreme Court, followed by our own court in *Acme Wrecking Co v. O'Rourke Constr.* Co. (Mar. 1, 1995), 1st Dist. No. C–930856, 1995 WL 84188, and supported by the overwhelming weight of authority from other states. As the United States Supreme Court has observed, faced with controlling authority by a superior court and another line of decisions, a court of appeals has only one course—to follow the authority of the court to which it is inferior, "leaving to [the higher court] the prerogative of overruling its own

decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.* (1989), 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526.

{¶ 9} Johnson also asks us to reconsider her argument that if the direct-purchaser requirement is to apply, then she should be considered a direct-purchaser of the licensing agreement that she was obligated to accept before being able to use her Windows operating system. As we noted in our decision, however, this same argument has been unanimously rejected, and we again decline the invitation to adopt a uniformly discredited position.

{¶ 10} We are not necessarily opposed in principle to the position taken by Johnson and the dissent—that consumers, even if not direct-purchasers, should be considered among the injured for the purposes of Ohio's version of the Valentine Act. *Illinois Brick* was based upon broad assumptions concerning the reliability of pass-on theories, their propensity to complicate damage calculations, and the disincentive of plaintiffs to sue for diluted recoveries. These assumptions could prove to be false in the light of modern economic and damage theories. Surely, the number of cases by consumers against Microsoft belies the assumption that plaintiffs are not willing to sue for their smaller piece of the pie. A class action of the type brought by Johnson is, in this regard, the perfect vehicle to ensure that there is incentive enough to pursue such claims. As noted by the dissent, it seems largely unfair for consumers, who suffer the brunt of monopolistic pricing and who unlike retailers cannot "pass-on" its consequences, not to be able to sue for redress.

{¶ 11} As an intermediate appellate court, however, we are bound by the principle of statutory construction advanced by the Ohio Supreme Court in *C.K.*, and we do not have the freedom to pick and choose when to apply it. See *Rodriguez*, supra. Convinced that we have properly applied the law and followed the principles of stare decisis, we overrule the motion for reconsideration and let our earlier decision stand.

{¶ 12} In light of the important economic and public policy issues raised by this appeal, however, we urge the Ohio Supreme Court to take up this matter and revisit its decision in *C.K.* to determine whether it wishes to modify its view that Ohio's Valentine Act is patterned on federal antitrust law and should be interpreted in light of federal judicial construction with respect to the direct-purchaser requirement of *Illinois Brick*. As made clear by *Rodriguez*, the Ohio Supreme Court is the only court with the prerogative to reconsider its decisions, and we encourage the court to exercise that discretion for the purpose of putting its own imprimatur on these issues.

Motion denied.

DOAN, P.J., concurs.

PAINTER, J., dissents.

PAINTER, Judge, dissenting.

{¶ 13} I dissent for the same reasons as in my original dissent, *Johnson v. Microsoft Corp.*, 155 Ohio App.3d 626, 2003-Ohio-7153, 802 N.E.2d 712.