DECISION. *Page 2 
{¶ 1} Plaintiff-appellant Amy Peters filed a medical-malpractice action against defendants-appellees Dr. Joann Lohr, a general and vascular surgeon, and her employer, Cranley Surgical Associates, Inc. Peters sought to recover damages based on (1) Dr. Lohr's alleged negligence in failing to warn her about the possible risks involved in a biopsy of a lymph node on the left side of her neck, (2) Dr. Lohr's alleged negligence in performing the biopsy, and (3) Dr. Lohr's alleged negligence in failing to advise her of the "true nature of the damage" allegedly caused during the biopsy. Peters alleged that Lohr had damaged her spinal-accessory nerve during the operation, causing muscle atrophy in her shoulder and upper back, and impairing her ability to perform her work as a clerk at the United Parcel Service.
 {¶ 2} After a five-day trial, the jury returned a general verdict in favor of Dr. Lohr and Cranley Surgical Associates on all claims. Peters moved for judgment notwithstanding the verdict ("JNOV") or, in the alternative, a new trial, both of which were denied by the trial court. Peters now contests the jury verdict and the trial court's denial of her post-trial motions. She raises fourteen assignments of error for our review. Finding none of the assignments to be meritorious, we affirm the judgment of the trial court.
 Denial of JNOV on Lack-of-Informed-Consent Claim {¶ 3} In her first assignment of error, Peters argues that the trial court erred to her prejudice in failing to grant a JNOV on her lack-of-informed-consent claim. *Page 3 
 {¶ 4} The decision to grant or deny a Civ.R. 50 motion for JNOV is reviewed de novo.[1] A JNOV is proper if, upon viewing the evidence in a light most favorable to the non-moving party, reasonable minds could come to but one conclusion, that being in favor of the moving party.[2] "Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon" the motion.[3]
 {¶ 5} In Nickell v. Gonzalez, the Ohio Supreme Court set forth the elements for a lack-of-informed-consent claim.[4] The court held that a party lacks informed consent under the following circumstances:
 {¶ 6} "(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
 {¶ 7} "(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
 {¶ 8} "(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy."[5]
 {¶ 9} This court has held, furthermore, that "in applying the third part of the Nickell test, the jury must decide whether a reasonable person in the patient's *Page 4 
position, not the individual patient, would have foregone the treatment given the undisclosed information."[6]
 {¶ 10} Here, the trial court properly instructed the jury on applying the "reasonable person" standard. The jury, furthermore, heard testimony that Peters had an enlarged lymph node that had been present on her neck for approximately nine months to one year; that she was concerned about the nodule being cancerous; and that she was informed that the only way to positively establish that the lymph node was not cancerous was to undergo the biopsy surgery. One of Peters's own expert witnesses, Dr. Snow, even testified that it was perfectly acceptable for a physician to biopsy a nodule to assuage a patient's concerns. Peters herself testified that most people would have wanted to know with certainty if something was cancerous.
 {¶ 11} The jury found that while Peters had not been fully informed of the material medical risks and dangers inherently and potentially related to the proposed biopsy, and that she had not been informed of "the potential severity or probability of permanent damage to the spinal accessory nerve, that a reasonable person would have gone ahead with the biopsy even if there was a risk that the spinal accessory nerve could be damaged during the procedure."
 {¶ 12} Peters argues that the jury's findings presented the "perfect example" of why the reasonable-person standard set forth in paragraph (c) of the syllabus in Nickell is wrong. She argues that the more appropriate standard is that of the "individual patient." We are bound, however, as an intermediary court, until the *Page 5 
Ohio Supreme Court tells us otherwise, to apply the objective reasonable-person standard set forth in Nickell.[7] Furthermore, because this was an issue of fact for the jury to determine, and the record reveals that there was competent evidence to support the jury's finding, we cannot conclude that the trial court erred in denying Peter's motion for a JNOV. We, therefore, overrule her first assignment of error.
 Defense Counsel's Remarks in Closing Argument {¶ 13} In her second, third, and fourth assignments of error, Peters raises arguments related to defense counsel's conduct during closing argument. For ease of discussion, we address them together since the same standard of review applies.
 {¶ 14} Counsel is afforded great latitude during closing argument. Counsel, however, "must refrain from making arguments not supported by the evidence and must avoid inappropriate and offensive remarks concerning opposing counsel and witnesses. * * * `When argument spills into disparagement not based on any evidence, it is improper.' * * * And when the misconduct of defense counsel undermines the fair and impartial administration of justice, a new trial is warranted."[8]
 {¶ 15} In her second assignment of error, Peters argues that the trial court erred to her prejudice in permitting unprofessional and improper closing argument by defense counsel, and that this denied her a fair trial. She contends that the following comments by defense counsel regarding her expert witness *Page 6 
were improper: "So Mr. Metz got these two physicians from this professional witness organization that matches up doctors and attorneys, both from the same group"; "Dr. Kravitz. This is the doctor who lost his privileges to do surgery at the hospital. He got up there and said it's all political, all the other things were going on. But the fact remains, a hospital that he practiced at for years and years and years said to him you can't practice here, your privileges are revoked"; "Well who do you want to believe a physician like Dr. Snow and Dr. Kravitz who have hundreds and hundreds of reviews and 99.9 percent of them are for the plaintiff, or do you want to believe someone like Joann Lohr and Dr. Kirkpatick, who what I like to say, they're in the trenches every day, doing surgery, trying to help people?"
 {¶ 16} Peters's counsel did not object to any of these comments. We, therefore, review them only for plain error.[9] In our view, counsel's comments, were based upon the evidence presented at trial.[10] We, therefore, find her argument about these comments meritless.
 {¶ 17} Peters also argues that defense counsel committed misconduct during closing argument when he stated, "There are several questions that I thought about over the last few days that I would like Mr. Metz to get up here and answer these because I think these are important. And I think if he doesn't answer these questions, you ought to think to yourself, why doesn't he want the jury to know this information." *Page 7 
 {¶ 18} While this comment was improper in that it implied that Peters's counsel was trying to keep information from the jury, Peters did not object. We cannot say that this comment was so prejudicial as to deny her a fair trial. Consequently, we overrule her second assignment of error.
 Golden Rule {¶ 19} In her third assignment of error, Peters contends that the trial court erred in failing to sustain her objection to defense counsel's use of a "golden rule" argument during his closing statement. Peters maintains that defense counsel violated the "golden rule" by the telling the jury that "when you walk in the shoes of the doctor at the time — that is the way you have to look at it as an expert."
 {¶ 20} "A `golden rule' argument exists where counsel appeals to the jury to abandon their position of impartiality by placing themselves in the place of one of the parties. * * * Courts have further determined that while the golden rule argument is no longer per se prejudicial so as to warrant a new trial, this type of argument remains objectionable."[11]
 {¶ 21} Viewing defense counsel's comments in the context of his entire closing argument, we are not persuaded that they violated the golden rule or that they unduly prejudiced Peters. Defense counsel was merely referring to the fact that one of the defense experts, Dr. Kirkpatrick, had reviewed the medical information prospectively, just as Dr. Lohr had done when she was treating Peters. Defense counsel then argued that the jury should afford Dr. Kirkpatrick's testimony more weight than the testimony of the plaintiffs experts, who had *Page 8 
reviewed the evidence retrospectively. We, therefore, overrule the third assignment of error.
 Defense Counsel's Comments on Failure to Call Witnesses {¶ 22} In her fourth assignment of error, Peters argues that the trial court erred to her prejudice by permitting defense counsel in closing argument to allude to witnesses who had not been called during the trial.
 {¶ 23} Generally, a party may not comment upon an opponent's failure to call a witness who is not under the opponent's control or who is equally available to the parties.[12] The danger from such comments is that the jury will presume the testimony would have been unfavorable to the non-calling party.[13] Nevertheless, counsel may argue about the evidence and all reasonable inferences from it.[14]
 {¶ 24} During the trial, Peters's counsel had relied on medical records from several physicians, who had seen or treated Peters after her August 1999 appointment with Dr. Lohr to establish the facts of her claims. During closing argument, plaintiff's counsel referred to the records of these physicians, stating, "Dr. Woo [a neurologist who had treated Peters] doesn't have a dog in this fight," and in reference to Peters's primary care physician, Dr. McCarren, "What does he have to win or lose in this case?" None of these fact witnesses were called to testify at trial, yet Peters's counsel argued that their notes in the medical records supported Peters's testimony that she had been experiencing severe pain since the biopsy procedure. *Page 9 
 {¶ 25} Defense counsel was merely responding to Peters's argument by pointing out that Dr. Lohr's medical records contradicted Peters's testimony, and that Peters had presented the only testimony concerning the duration of her pain. Furthermore, the trial court instructed the jury, following the objection by Peters's counsel, that defense counsel's comments were not evidence. Consequently, we cannot conclude that the trial court committed error when it permitted defense counsel to refer in closing argument to the failure of these witnesses to testify. We, therefore, overrule the fourth assignment of error.
 Matters Consigned to the Trial Court's Discretion {¶ 26} In her remaining ten assignments of error, Peters raises a number of evidentiary issues. "To succeed on these assignments of error, [Peters] must demonstrate that, in making its decisions, the trial court exhibited an attitude that was `unreasonable, arbitrary, or unconscionable.' * * * In applying this standard, a reviewing court `is not free to substitute its judgment for that of the trial judge.' * * * Rather, if a trial court's exercise of its discretion exhibits a sound reasoning process that would support its decision, a reviewing court will not disturb that determination."[15]
 Cross-Examination of Defense Experts {¶ 27} In her fifth assignment of error, Peters argues that the trial court erred to her prejudice by refusing to permit her, during cross-examination of a defense expert witness, to use a learned treatise for impeachment purposes.
 {¶ 28} "In Ohio, learned treatises may be used for impeachment purposes. Evid.R. 706 provides that learned treatises may be used to show that an expert is *Page 10 
unaware of their existence or unfamiliar with their contents. * * * Additionally, the contents of a treatise may be used to impeach the credibility of a witness who relied on the treatise in forming his or her opinion, or who acknowledges the authoritative nature of the treatise."[16]
 {¶ 29} During cross-examination, plaintiff's counsel asked Dr. Kirkpatrick if he was familiar with the Journal of Plastic and Reconstructive Surgery. Dr. Kirkpatrick responded, "I've heard of it." Plaintiff's counsel then tried to ask Dr. Kirkpatrick substantive questions about the contents of the journal. When defense counsel objected, the trial court sustained the objection.
 {¶ 30} While plaintiffs counsel was permitted under Evid.R. 706 to impeach Dr. Kirkpatrick on the fact that he was unfamiliar with the journal, counsel was not permitted to ask Dr. Kirkpatrick substantive questions about the journal's contents after Dr. Kirkpatrick had testified that he was unfamiliar with the journal and that he had not relied upon it to form his opinions in the case. Consequently, we cannot conclude that the trial court abused its discretion in prohibiting plaintiff's counsel from cross-examining him about the substance of the text. As a result, we overrule the fifth assignment of error.
 Testimony on Professional Censure {¶ 31} In her sixth assignment of error, Peters argues that the trial court erred by prohibiting plaintiff's counsel from eliciting testimony concerning professional medical organizations' retribution against her expert witness, Dr. Kravitz, when defense counsel had attacked Dr. Kravitz's motives for testifying *Page 11 
during cross-examination. But the record reveals that, contrary to plaintiffs argument, Dr. Kravitz testified during redirect that "just by being here I risk censure of the American College of Surgeons."
 {¶ 32} While Peters's counsel was not allowed to explore the issue any further during his redirect examination of Dr. Kravitz, Dr. Kravitz's prior statement on this issue was before the jury. Moreover, during recross-examination by defense counsel, Dr. Kravitz testified that the American College of Surgeons was "trying to dissuade physicians from doing plaintiffs expert witness work." Peters's counsel referred to Dr. Kravitz's testimony in her closing statement, stating that both her expert witnesses had risked professional censure by testifying at trial. Consequently, we find Peters's sixth assignment of error feckless.
 Expert Testimony about Possibilities {¶ 33} In her seventh assignment of error, Peters argues that the trial court erred to her prejudice by permitting defense counsel to repeatedly place "possibilities" before the jury as evidence. In support of her argument, she relies upon the Ohio Supreme Court's decision inStinson v. England,[17] in which the court held in part, "[E]xpert opinion regarding a causative event, including alternate causes, must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue."
 {¶ 34} Peters maintains that the trial court improperly allowed the defense experts, Dr. Lohr, Dr. Kirkpatrick, and Dr. Rea, to testify about "possibilities" *Page 12 
rather than probabilities. She refers to selected portions of their testimony in her brief. But when reading their testimony in context, we are confident that each expert's testimony was appropriately predicated upon an agreement with defense counsel that he would give his opinion to a reasonable degree of medical probability. We, therefore, overrule her seventh assignment of error.
 Qualifications of Dr. Rea {¶ 35} In her eighth assignment of error, Peters argues that the trial court erred in permitting Dr. Rea to provide expert testimony when (1) he did not perform the type of surgery that Dr. Lohr had performed, and (2) he did not have a sufficient factual foundation to render his opinion.
 {¶ 36} "Where `fields of medicine overlap and more than one type of specialist may perform the treatment, a witness may qualify as an expert even though he does not practice the same specialty as the defendant.' The test of admissibility is whether a particular witness offered as an expert will aid the trier of fact in the search for the truth, not whether the expert witness is the best witness on the subject."[18]
 {¶ 37} Peters first argues that Dr. Rea, a neurosurgeon, was unqualified to give opinion testimony concerning the operative procedure involved here because he had no personal experience in performing such an operation. The fact that Dr. Rea had never performed a biopsy on a lymph node would only have had a bearing on the weight and credibility to be given to his testimony, but it would not have rendered him incompetent under the law to express an opinion as an *Page 13 
expert in this case, particularly in view of his medical training and professed knowledge of the standard and procedure for such an operation through study and knowledge.[19] Consequently, we cannot conclude the trial court abused its discretion in permitting Dr. Rea to testify regarding the biopsy procedure.
 {¶ 38} Peters next argues that Dr. Rea lacked a sufficient factual foundation to render his opinions at trial. While Dr. Rea did have difficulty remembering certain aspects of Peters's care during the trial, plaintiff's counsel vigorously highlighted the weaknesses in his testimony during her cross-examination and during closing argument. The impact of those weaknesses in his testimony were ultimately for the trier of fact to weigh. Consequently, we overrule the eighth assignment of error.
 Defendant's Testimony about Other Spinal-Accessory-Nerve Injuries {¶ 39} In her ninth assignment of error, Peters argues that the trial court erred to her prejudice by allowing Dr. Lohr to testify that she had never had a spinal-accessory-nerve injury in other lymph-node biopsies.
 {¶ 40} The trial court found that this testimony was relevant to Peters's lack-of-informed-consent claim. If this injury had previously occurred in Dr. Lohr's practice, then she would have been on notice that it was a possible risk of the procedure. Thus, the jury could have considered this testimony to determine that Dr. Lohr had failed to disclose to Peters the risk of a spinal-accessory-nerve injury because the doctor had not previously dealt with such an injury. *Page 14 
 {¶ 41} We further fail to see how this testimony prejudiced Peters when the jury ultimately found in the interrogatories that Dr. Lohr had failed to disclose this risk to Peters. Consequently, we overrule her tenth assignment of error.
 Comments on Jury Instructions During Closing Argument {¶ 42} In her tenth assignment of error, Peters argues that the trial court erred to her prejudice by refusing to allow her counsel to read the jury instructions during his closing argument.
 {¶ 43} As we have already noted, the scope of the parties' closing arguments is within the sound discretion of the trial court.[20] An appellate court, therefore, will not interfere with a limitation on closing argument unless it is clear that the complaining party was denied a fair trial.[21] It is the province of the trial court, moreover, and not counsel, to instruct the jury on the law in a given case.[22]
 {¶ 44} Here, the trial court did prevent Peters's counsel from reading the jury instructions during closing argument. Counsel, however, was permitted to tell the jurors that they would receive two packets of jury instructions — one for informed consent and one for medical negligence — and to direct the jurors to all the evidence presented during the trial that, counsel believed, established the elements of Peters's claims. Consequently, we cannot conclude that the trial court's actions resulted in an abuse of discretion or denied Peters a fair trial.[23]
We, therefore, overrule her tenth assignment of error.
 Cross-Examination on Commonality of Insurance *Page 15 {¶ 45} In her eleventh assignment of error, Peters argues that the trial court erred to her prejudice by refusing to permit her counsel to cross-examine defense witnesses on the commonality of insurance.
 {¶ 46} "The scope of cross-examination of a medical expert on questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest within the sound discretion of the trial court."[24] Thus, absent an abuse of discretion, a trial court's ruling will be upheld.[25] "[A]n expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testifies favorably for that defendant."[26]
 {¶ 47} Here, plaintiff's counsel wanted to cross-examine a defense expert witness on the commonality of his medical-malpractice insurance with Dr. Lohr. The trial court, however, denied the cross-examination because the expert's current malpractice insurance was not through the same company as Dr. Lohr's. We cannot say that the trial court abused its discretion by disallowing the cross-examination where there was no current commonality of insurance between the defendant and one of the defendant's expert witnesses, and where the trial court concluded that the risk of prejudice from allowing such testimony substantially outweighed the probative value of such testimony.[27] *Page 16 
 Parole Evidence on Informed Consent {¶ 48} In her twelfth assignment of error, Peters argues that it was erroneous under R.C. 2317.54 for the trial court to allow Dr. Lohr to testify about the specific risks she had discussed with Peters prior to the surgery. We overrule her assignment of error on the authority ofWerden v. Children's Hospital Medical Center.[28]
 Surprise Testimony by Defense Witnesses {¶ 49} In her thirteenth assignment of error, Peters argues that the trial court erred to her prejudice by permitting defense witnesses to ignore the rules of discovery and the rules of evidence.
 {¶ 50} "The discovery rules are designed to eliminate surprise caused by the presentation of undisclosed expert opinions at trial. * * * To that end, a party must `provide opposing counsel with updated and complete discovery regarding the substance of expert testimony * * * because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced.'"[29]
 {¶ 51} Peters argues that the trial court erred in allowing Dr. Kirkpatrick and Dr. Rea to testify about matters that were not addressed in their deposition testimony. But neither doctor's deposition had been filed with the trial court, so there is nothing in the record, other than counsel's arguments, to suggest that the trial testimony was inconsistent with the deposition testimony. *Page 17 
 {¶ 52} Peters next argues that the trial court erred by allowing the expert witnesses to ignore the rules of discovery by failing to produce their billing records or certain medical literature at their depositions. We fail to see how the testimony prejudiced Peters, when Peters's counsel was permitted to impeach the experts' credibility by cross-examining them on their failure to comply with the deposition subpoenas. Counsel was also able to establish the experts' financial bias by asking them on cross-examination how much they had charged for their participation in the case. Both doctors testified, furthermore, that they had not relied on any specific literature when rendering their opinions, so Peters cannot demonstrate that their failure to produce any literature at their depositions was prejudicial to her case.
 {¶ 53} Peters next contends that the trial court erred in allowing Dr. Kirkpatrick to testify that the medical literature generally supported his opinion. But as the Ohio Supreme Court clarified in Beard v. MeridiaHuron Hosp., "There is a difference between a witness's referring to specific statements in professional literature as substantive evidence and expert witness's referring to the literature as being part of the basis for that expert's opinion. While the former reference would be inadmissible hearsay, numerous courts in Ohio have held that the later reference is admissible. We agree with the decisions in those cases. * * * Because experts are permitted to base their opinions on their education, including their review of professional literature, training, and experience, it follows that experts are also permitted to testify regarding that information."[30] *Page 18 
Consequently, we cannot conclude that the trial court abused its discretion in permitting this testimony.
 {¶ 54} Finally, Peters argues that defense expert testimony about "scarring or fibrosis" of the nerve as a probable cause of her injury was nothing but "science fiction fantasy." Peters, however, never objected to this testimony at trial. All three defense experts, moreover, testified that they either knew scarring or fibrosis could happen or had personally experienced it in their practices. Consequently, we find this argument without merit. We, therefore, overrule the thirteenth assignment of error.
 Striking Juror for Cause {¶ 55} In her fourteenth assignment of error, Peters argues that the trial court erred in sua sponte striking a juror for cause. The juror stated in voir dire that she had had several bad experiences with physicians. When asked by the trial court whether she would carry those bad experiences into trial, she responded, "I pray I won't." She also said that physicians "should know the body more than what they know." After listening to several other "controversial" answers by the juror, the trial court dismissed her for cause, stating on the record its concern that both sides receive a fair trial.
 {¶ 56} The trial court had the opportunity to observe the demeanor of the prospective juror and to evaluate the sincerity of her responses to the questions. Its decision to exclude her, therefore, is entitled to deference by this court.[31] Furthermore, the Ohio Supreme Court has held that "an erroneous excusal cannot cause the seating of a biased juror and therefore, does not taint the jury's *Page 19 
impartiality."[32] Thus, even if we were to assume arguendo that the trial court had erred in dismissing the juror, Peters could demonstrate no prejudice from the her dismissal. Accordingly, we overrule the fourteenth assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
PAINTER, P.J., and HILDEBRANDT, J., concur.
[1] Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co.,95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 4.
[2] Civ.R. 50(A)(4) and (B); Goodyear, supra, at ¶ 3.
[3] Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275,344 N.E.2d 334.
[4] (1985), 17 Ohio St.3d 136, 477 N.E.2d 1145, syllabus.
[5] Id. at 139, quoted in Werden v. Children's Hospital, 1st Dist. No. C-040889, 2006-Ohio-4600, at ¶ 134- ¶ 137.
[6] Valerius v. Freeman (Oct. 19, 1994), 1st Dist. No. C-930658; see, also, Turner v. Cleveland Clinic Found., 8th Dist. No. 80949, 2002-Ohio-4790, at ¶ 32.
[7] See, e.g., Johnson v. Microsoft Corp., 156 Ohio App.3d 249,2004-Ohio-761, 805 N.E.2d 179, at ¶ 11 (internal citations omitted).
[8] Werden, supra, at ¶ 57.
[9] Bowden v. Annenberg, 1st Dist. No. C-040409, 2005-Ohio-6515, at ¶ 31.
[10] Id. at ¶ 34.
[11] Hunt v. Crossroads Psychiatric Psychological Ctr. (Dec. 6, 2001), 8th Dist. No. 79120 (internal citations omitted); see, also,Lykins v. Miami Valley Hospital, 157 Ohio App.3d 291, 2004-Ohio-2732,811 N.E.2d 124, at ¶ 31.
[12] See, e.g., United States v. Iredia (C.A.5, 1989), 866 F.2d 114,117.
[13] Werden, supra, at ¶ 61.
[14] See Smith v. Sass, Friedmann Assocs., Inc. (Feb. 5, 2004), 8th Dist. No. 81953, 2004-Ohio-494, at ¶ 26.
[15] Bowden, supra, at ¶ 49 (internal citations omitted).
[16] Beard v. Meridia Huron Hosp., 106 Ohio St.3d 237, 240,2005-Ohio-4787, 834 N.E.2d 323, fn.1.
[17] 69 Ohio St.3d 451, 456, 1994-Ohio-35, 633 N.E.2d 532.
[18] King v. LaKamp (1988), 50 Ohio App.3d 84, 85, 533 N.E.2d 701, quoting Alexander v. Mt. Caramel Med. Ctr. (1978), 56 Ohio St.2d 155,158, 383 N.E.2d 564.
[19] See Alexander, supra, at 157.
[20] Pang v. Minch (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph two of the syllabus.
[21] Byrd v. Baltimore (1966), 10 Ohio App.2d 187, 195,227 N.E.2d 252.
[22] Civ.R. 51(A).
[23] Waldecker v. Pfefferie, 6th Dist. No. E-02-002, 2002-Ohio-6187, at ¶ 32- ¶ 34.
[24] Calderon v. Sharkey (1982), 70 Ohio St.2d 218, 224,436 N.E.2d 1008.
[25] Id. at 222.
[26] Davis v. Immediate Med. Serv. (1997), 80 Ohio St.3d 10,684 N.E.2d 292, paragraph two of the syllabus; see, also Fehrenbach v.O'Malley, 164 Ohio App.3d 80, 2005-Ohio-5554, 841 N.E2d 350, at ¶ 37.
[27] Evid.R. 403; see, also, Bernal v. Lindholm (1999),133 Ohio App.3d 163, 172-173, 727 N.E.2d 145.
[28] Werden, supra, at ¶ 129- ¶ 138; see also, Joiner v. Simon, 1st Dist. No. C-050718, 2007-Ohio-425, at ¶ 39- ¶ 43.
[29] Joiner, supra, at ¶ 55 (internal citations omitted).
[30] Beard, supra, at 240.
[31] Berk v. Matthews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301.
[32] State v. Sanders, 92 Ohio St.3d 245, 249, 2001-Ohio-189,750 N.E.2d 90. *Page 1