[Cite as *State v. Hill*, 2011-Ohio-3920.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100554 |
|  |  | TRIAL NO. B-9103654 |
| Respondent-Appellee, | : |  |
|  |  | *D E C I S I O N.* |
| vs. | : |  |
|  |  |  |
| GENESIS L. HILL, | : |  |
|  |  |  |
| Petitioner-Appellant. | : |  |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 10, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for Respondent-Appellee,

*Ravert J. Clark*, for Petitioner-Appellant.

Per Curiam.

{¶1}    Petitioner-appellant Genesis L. Hill appeals from the Hamilton County Common Pleas Court's judgment dismissing his postconviction petition seeking relief from his death sentence on the ground of mental retardation or, in the alternative, "diminished intellectual capacity." We affirm the court's judgment.

{¶2}    In 1991, a Hamilton County jury found Hill guilty of aggravated murder, aggravated burglary, and kidnapping in connection with the death of his infant daughter. For the aggravated murder, the trial court imposed a sentence of death. Hill unsuccessfully challenged his convictions in direct appeals to this court, the Ohio Supreme Court, and the United States Supreme Court,[1] and in postconviction petitions filed in 1996[2] and 2000.[3] His petition for a writ of habeas corpus remains pending before the United States District Court for the Southern District of Ohio.

{¶3}    On October 21, 2009, Hill filed with the common pleas court a third postconviction petition. In his petition, Hill cited the United States Supreme Court's decision in *Atkins v. Virginia*[4] in support of his claim seeking relief from his death sentence on the ground that he is mentally retarded. He later amended his petition to seek, in the alternative, a new sentencing hearing for the purpose of determining whether, in light of "the change[d] national consensus against imposing the death penalty on mentally retarded offenders identified in *Atkins*[,] * * * [his] diminished intellectual capacity is sufficiently mitigating to outweigh the aggravating

---

[1] See *State v. Hill* (Dec. 22, 1994), 1st Dist. Nos. C-910916 and C-940487, affirmed, 75 Ohio St.3d 195, 1996-Ohio-222, 661 N.E.2d 1068, certiorari denied sub nom. *Hill v. Ohio* (1996), 519 U.S. 895, 117 S.Ct. 241.
[2] See *State v. Hill* (Nov. 21, 1997), 1st Dist. No. C-961052, discretionary appeal not allowed (1998), 81 Ohio St.3d 1468, 690 N.E.2d 1288.
[3] See *State v. Hill* (Dec. 24, 2003), 1st Dist. No. C-030384, appeal not accepted for review, 102 Ohio St.3d 1448, 2004-Ohio-2263, 808 N.E.2d 398.
[4] (2002), 536 U.S. 304, 122 S.Ct. 2242.

circumstances and justify imposition of a [life] sentence." The common pleas court dismissed the petition as amended. This appeal followed.

{¶4}    Hill presents on appeal five assignments of error. He contends that the common pleas court erred in (1) failing to make findings of fact and conclusions of law concerning his alternative claim for relief, (2) failing to "address" his alternative claim, (3) dismissing his postconviction petition on the ground that it was late, (4) applying to his *Atkins* claim a "heightened burden of proof," and (5) failing to conduct an evidentiary hearing on his postconviction claims.

### I. Hill's Atkins Claim

{¶5}    We address first Hill's third and fifth assignments of error to the extent that they challenge the dismissal of his postconviction *Atkins* claim without an evidentiary hearing, and his fourth assignment of error, challenging the constitutionality of the court's "application of a heightened burden of proof" in reviewing this claim. These challenges are untenable.

{¶6}    In June 2002, the Supreme Court ruled in *Atkins* that executing a mentally retarded offender violates the proscription against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution.[5] The Supreme Court in *Atkins* left to the states the task of establishing procedures and substantive standards for adjudicating an *Atkins* claim. In December 2002, the Ohio Supreme Court in *State v. Lott*[6] determined that R.C. 2953.21 et seq., governing the proceedings on a petition for postconviction relief, provided "a suitable statutory framework for reviewing [an] *Atkins* claim" advanced by an offender who had been sentenced to death before the *Lott* decision.[7]

---

[5] Id.
[6] 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011.
[7] Id. at ¶13.

{¶7} The postconviction statutes confer upon a common pleas court jurisdiction to entertain a collateral challenge to a judgment of conviction based on a state or federal constitutional violation that occurred during the proceedings resulting in the conviction, if the petitioner satisfies either R.C. 2953.21's time limits or R.C. 2953.23's jurisdictional requirements.[8]  R.C. 2953.21, in relevant part, requires that a postconviction petition be filed within 180 days after the trial transcript was filed in the direct appeal to the court of appeals.[9]  R.C. 2953.23 closely circumscribes the common pleas court's jurisdiction to entertain a late or successive postconviction petition:  the petitioner must show either that he was unavoidably prevented from discovering the facts upon which his claim depends, or that his claim is predicated upon a new, retrospectively applicable federal or state right recognized by the United States Supreme Court since the period prescribed by R.C. 2953.21 expired;[10] and when the claim challenges a death sentence, the petitioner must "show[] by clear and convincing evidence that, * * * but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence."[11]

### A. "Heightened burden of proof"?

{¶8}    As a preliminary matter, we note that the supreme court in *Lott* excused from R.C. 2953.23(A)(1)(b)'s clear-and-convincing-evidence jurisdictional standard any petitioner who had been sentenced to death before the *Atkins* decision, and who filed a

---

[8] See R.C. 2953.21(A)(1)(a) and 2953.23(A).
[9] See R.C. 2953.21(A)(2).
[10] See R.C. 2953.23(A)(1)(a). The citations in this case are to the postconviction statutes as amended effective October 29, 2003.  In December 2002, when *Lott* was decided, R.C. 2953.23(A)(1) and 2953.23(A)(2) similarly permitted a common pleas court to entertain a late or successive postconviction challenge to a death sentence if "(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief," or "(b) Subsequent to the period prescribed in [R.C. 2953.21](A)(2) * * * or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right," and "[t]he petitioner shows by clear and convincing evidence that, * * * but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence."
[11] R.C. 2953.23(A)(1)(b).

postconviction *Atkins* claim within 180 days of the *Lott* decision. For those petitioners, the court declared, the common pleas court "shall decide whether the petitioner is mentally retarded by using the preponderance-of-the-evidence standard."[12] But the court held that a petitioner who files a postconviction *Atkins* claim "more than 180 days after [the *Lott*] decision must meet the statutory [jurisdictional] standards for untimely and successive petitions for postconviction relief."[13]

{¶9}   Hill was sentenced to death before *Atkins* was decided, but he filed his *Atkins* claim nearly seven years after *Lott* was decided. Thus, the common pleas court had jurisdiction to entertain Hill's postconviction *Atkins* claim only upon his satisfaction of the R.C. 2953.23 jurisdictional requirements, including R.C. 2953.23(A)(1)(b)'s requirement that he prove by clear and convincing evidence outcome-determinative constitutional error in the imposition of his death sentence.

{¶10}   In his fourth assignment of error, Hill challenges the common pleas court's review of his postconviction *Atkins* claim under R.C. 2953.23(A)(1)(b)'s clear-and-convincing-evidence jurisdictional standard. He argues that the court's review of his claim under the "heightened" standard applicable to *Atkins* claims filed more than 180 days after the *Lott* decision, rather than the preponderance-of-the-evidence standard applicable to *Atkins* claims filed within 180 days after the *Lott* decision, violated the rights guaranteed to him under the Equal Protection Clauses of the United States and Ohio Constitutions, because no rational basis supports the underlying distinction.

---

[12] *Lott*, 97 Ohio St.3d at ¶17 and 24.
[13] Id. at ¶24.

{¶11} But an inferior court must follow the controlling authority of a higher court, leaving to the higher court the prerogative of overruling its own decision.[14] The supreme court in *Lott* held that a postconviction *Atkins* claim filed more than 180 days after the *Lott* decision must satisfy the R.C. 2953.23 jurisdictional standards.[15] The common pleas court was not free to proceed, nor is this court free to decide, otherwise. Accordingly, we overrule Hill's fourth assignment of error.

### B. No jurisdiction to entertain Hill's Atkins claim.

{¶12} Hill's postconviction *Atkins* claim satisfied the first R.C. 2953.23 jurisdictional requirement. R.C. 2953.23(A)(1)(a) requires a late or successive postconviction petitioner to show either (1) that he was unavoidably prevented from discovering the facts upon which his claim depends, or (2) that his claim is predicated upon a new, retrospectively applicable federal or state right recognized by the United States Supreme Court since the R.C. 2953.21 filing time expired. Hill was sentenced to death before the 2002 decision in *Atkins*. And the supreme court in *Lott* held that a postconviction *Atkins* claim filed by an offender sentenced to death before the *Atkins* decision satisfies the R.C. 2953.23(A)(1)(a) jurisdictional requirement because the Supreme Court in *Atkins* "ha[d] recognized a new federal right applying retroactively to convicted defendants facing the death penalty."[16]

{¶13} But Hill failed to satisfy the second R.C. 2953.23 jurisdictional requirement. R.C. 2953.23(A)(1)(b) required that he also "show[] by clear and convincing evidence that, * * * but for constitutional error at the sentencing hearing, no reasonable factfinder would have found [him] eligible for the death sentence." Thus,

---

[14] See *Johnson v. Microsoft Corp.*, 156 Ohio App.3d 249, 2004-Ohio-761, 805 N.E.2d 179, ¶11, following *Rodriguez de Quijas v. Shearson/Am. Exp. Inc.* (1989), 490 U.S. 477, 484, 109 S.Ct. 1917.
[15] See *Lott*, 97 Ohio St.3d at ¶24.
[16] Id. at ¶17.

Hill bore the burden of demonstrating the claimed Eighth Amendment violation by offering in support of his claim clear and convincing evidence demonstrating that he is, in the words of the Supreme Court in *Atkins*, "so impaired as to fall within the range of mentally retarded offenders [against] who[se] [execution] there [had emerged] a national consensus."[17]  This he failed to do.

### 1. The mental-retardation criteria.

{¶14}  The supreme court in *Lott* provided three criteria for evaluating a death-eligible defendant's claim that he is mentally retarded.[18]  The defendant must demonstrate (1) that he suffers from "significantly subaverage intellectual functioning," (2) that he has experienced "significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction," and (3) that his intellectual and adaptive-skills limitations had manifested themselves before the age of 18.[19]

{¶15}  Hill offered in support of his postconviction petition the 2001 affidavit of clinical psychologist Michael M. Gelbort.  Hill's counsel had engaged Dr. Gelbort in 1999 to conduct a neuropsychological evaluation of Hill to determine if he demonstrated brain or neurocognitive deficits or dysfunction.  Dr. Gelbort interviewed and tested Hill, examined records, and compiled a social history.  Dr. Gelbort also reviewed a "comprehensive mitigation report" provided in 1998 by Dr. Robert L. Smith. The report "synthesized [Hill's] long history of mental illness, drug dependency, and detailed physical and sexual abuse."  Dr. Gelbort concluded that, at the time of his offense, Hill had suffered from "long standing" "organic brain impairment" and had "lacked the substantial capacity to appreciate the criminality of his conduct."[20]

---

[17] See *Atkins*, 536 U.S. at 317.
[18] See *Lott*, 97 Ohio St.3d at ¶18; see, also, *Atkins*, 536 U.S. at 309, fn. 3.
[19] *Lott*, 97 Ohio St.3d at ¶12; accord *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶176.
[20] See *State v. Bedford*, 1st Dist. No. C-100735, 2011-Ohio-2054, ¶24 (citing *State v. Carter*, 157 Ohio App.3d 689, 2004-Ohio-3372, 813 N.E.2d 78, ¶22, to hold that the determination of a

{¶16} Hill also supported his petition with the February 2010 affidavit of clinical psychologist Karen Salekin. Dr. Salekin did not examine Hill, and she expressly declined to provide an opinion concerning Hill's intellectual disability. But based upon the affidavits of Drs. Gelbort and Smith, Dr. Salekin concluded that "Hill * * * require[d] a comprehensive evaluation of intellectual disability."

{¶17} In March 2010, the common pleas court, at Hill's request, appointed clinical psychologist David A. Ott to evaluate Hill for purposes of his *Atkins* claim. Dr. Ott evaluated Hill based on clinical interviews with Hill and his family members, available records, and the affidavits of Drs. Gelbort, Smith, and Salekin. Dr. Ott's report was admitted as a joint exhibit at the hearing on Hill's postconviction petition.

{¶18} The supreme court in *Lott* had formulated its mental-retardation criteria based upon the clinical definitions of mental retardation cited with approval by the Supreme Court in *Atkins*[21] and provided in a 1992 manual published by the American Association of Mental Retardation ("AMMR")[22] and in the 2000 Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association ("DSM").[23] Dr. Ott evaluated Hill under the diagnostic standards set forth in the 2000 DSM and in a manual published in 2010 by the AMMR's successor, the American Association on Intellectual and Developmental Disabilities ("AAIDD"). In its 2010 manual, the AAIDD defined what is now known as "intellectual disability" as "characterized by significant limitations both in intellectual functioning and in adaptive behavior as expressed in conceptual, social, and practical adaptive skills, * * *

_____

postconviction *Atkins* claim may be informed by expert testimony offered at trial for other purposes).
[21] See *Atkins*, 536 U.S. at 308, fn. 3; *Lott*, 97 Ohio St.3d at ¶12.
[22] American Association of Mental Retardation, Mental Retardation: Definition, Classification, and Systems of Supports (9 Ed.1992)
[23] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4 Ed.2000).

originat[ing] before age 18."[24]  In Dr. Ott's opinion, Hill did not meet either the DSM or the AAIDD criteria for a diagnosis of intellectual disability.

{¶19}  *Over-70 presumption.*  The court in *Lott* cautioned that an IQ test score is merely one measure of intellectual functioning that "alone [is] not sufficient to make a final determination on [the mental-retardation] issue."[25]  Nevertheless, the court held that an IQ score above 70 gives rise to "a rebuttable presumption that [the] defendant is not mentally retarded."[26]

{¶20}  IQ tests administered in 1985 (when Hill was 13 years old), in 1988 (when he was 17), in 1998 (when he was 27), and in 1999 (when he was 28) yielded full-scale scores of 85, 84, 77, and 75, respectively.  Thus, Hill is presumptively not mentally retarded.

{¶21}  *Intellectual functioning.* Concerning Hill's intellectual functioning, Dr. Gelbort concluded, based on the full-scale score of 75 on the test he administered in 1999, that Hill operated in the "borderline mentally deficient range."  Dr. Ott found that Hill's 85 and 84 IQ scores on tests administered before age 18 "were consistent with intellectual functioning within the borderline range of abilities," but that his 77 and 75 IQ scores on tests administered after age 18 "were consistent with intellectual functioning within the range of intellectual disability."

{¶22}  *Adaptive functioning.*  With respect to Hill's conceptual adaptive behavior, Dr. Ott found "important deficits" in Hill's self-direction skills, as reflected in his willingness as a teenager to give away money or belongings to develop or maintain friendships.  Dr. Ott also found a significant functional academic deficit in arithmetic,

---

[24] American Association on Intellectual and Developmental Disabilities, Intellectual Disability: Definition, Classification, and Systems of Supports 1 (11 Ed.2010).
[25] *Lott*, 97 Ohio St.3d at ¶12.
[26] Id.

but otherwise found Hill's academic achievement, along with his communication skills, to be "consistent with his intellectual abilities as assessed." Dr. Ott found no deficits in Hill's money-concepts skills. And although he found Hill's safety skills to be "variable," Dr. Ott concluded that Hill's unsafe behaviors were unrelated to an intellectual or developmental disability.

{¶23} Concerning Hill's social adaptive behavior, Dr. Ott found that, as a boy, Hill had exhibited age-appropriate interpersonal skills and peer relationships. But Dr. Ott found that Hill's later relationships with older women possibly "reflect[ed] a continuation of [the] sexual exploitation" involved in his sexual abuse as a teenager and in a relationship in which he had provided sexual favors in exchange for drugs or alcohol. Dr. Ott characterized as "conflicting" the available information concerning the social skills of gullibility, naivete, and avoiding victimization: reports of sexual exploitation, bullying, and victimization were tempered by Hill's assertion that he had endured being taken advantage of by his peers to avoid "circumstances in his home." This willingness to endure exploitation to develop and maintain friendships, along with Hill's feelings concerning his family's limited resources and his academic difficulties, suggested to Dr. Ott that Hill had also experienced "difficulties" concerning his self-esteem. But Dr. Ott noted that Hill's "difficulties" with the social skills of responsibility, following rules and directions, and obeying laws, including his absenteeism from school and work and his contact with the juvenile-justice system, had not emerged until he entered adolescence and began to use substances.

{¶24} With respect to Hill's practical adaptive behavior, Dr. Ott discerned no significant deficits concerning Hill's daily-living and self-care activities, his instrumental activities of daily living, his transportation and community-use skills, or

his home-living skills. But Dr. Ott found Hill's occupational skills "rather limited," because tardiness and absenteeism had precluded Hill from holding a job long enough to support himself.

{¶25} *Onset before age 18.* Finally, concerning Hill's functioning before the age of 18, Dr. Ott found no significant deficits in Hill's intellectual functioning and "early difficulties" only in Hill's conceptual adaptive skills, as shown by his retention in multiple primary grades. In Dr. Ott's assessment, "more significant adaptive problems * * * developed as * * * Hill entered adolescence."

### 2. Over-70 presumption not rebutted.

{¶26} Dr. Ott based his evaluation of Hill upon clinical interviews and available records, including the affidavits of Drs. Gelbort, Smith, and Salekin upon which Hill's postconviction *Atkins* claim depended. Dr. Ott found significant deficits in Hill's intellectual functioning after age 18, but not before. Dr. Ott also found that Hill had exhibited deficits in his practical-adaptive occupational skills and in the conceptual adaptive skills of avoiding victimization, functional academics (i.e., arithmetic), and following rules/obeying laws. But because many of these deficits had emerged as Hill entered adolescence and began to engage in "significant use of substances and delinquent activity," Dr. Ott concluded that the "available information [did] not support the presence of substantial deficits in adaptive functioning to the degree required to meet this prong of the diagnostic criteria." And in the absence of significant deficits in intellectual functioning before age 18, Dr. Ott concluded that Hill did not meet either the DSM or the AAIDD criteria for a diagnosis of intellectual disability.

{¶27} Thus, the record before us does not demonstrate significant limitations in Hill's intellectual or adaptive functioning. We, therefore, hold that Hill has failed to

rebut the presumption, arising from his over-70 IQ scores, that he is not mentally retarded.

### 3. Atkins claim subject to dismissal without a hearing.

{¶28} R.C. 2953.21(C) authorizes an evidentiary hearing on a postconviction petition. But a postconviction claim is subject to dismissal without a hearing, when the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief.[27]  Thus, the purpose of an R.C. 2953.21(C) hearing is to aid the court in deciding a postconviction claim on its merits.  And the statute cannot be read to mandate a hearing on a postconviction claim that the court is without jurisdiction to entertain on its merits.

{¶29} The determination that a defendant is not, by the *Lott* court's definition, mentally retarded will not be disturbed on appeal if it was supported by some competent and credible evidence.[28]  The court below had before it competent and credible evidence to support a finding that Hill is not mentally retarded.  Thus, Hill failed to show by clear and convincing evidence the claimed Eighth Amendment violation.  In turn, he failed to satisfy the R.C. 2953.23 jurisdictional requirement of outcome-determinative constitutional error in the execution of his death sentence.

{¶30} Because the common pleas court had no jurisdiction to entertain Hill's late postconviction *Atkins* claim, the court properly declined to conduct an evidentiary hearing on the claim, and the claim was subject to dismissal.  Therefore, we overrule the third and fifth assignments of error as they pertain to the dismissal of Hill's *Atkins* claim without an evidentiary hearing.

---

[27] See R.C. 2953.21(C); *State v. Pankey* (1981), 68 Ohio St.2d 58, 428 N.E.2d 413; *State v. Jackson* (1980), 64 Ohio St.2d 107, 413 N.E.2d 819.
[28] See *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶45.

## II. Non-Atkins Claim

{¶31} The balance of Hill's assignments of error challenge the common pleas court's disposition of his alternative postconviction claim. In his amended petition, Hill asserted that "even if [he] * * * does not meet the legal definition of mentally retarded so as to bar the death penalty entirely," the Supreme Court's recognition in *Atkins* of an evolved national consensus concerning executing the mentally retarded required consideration of his "diminished intellectual capacity" as a mitigating factor in a new penalty-phase hearing. His first and second assignments of error challenge the court's failure to "address" or to make findings of fact and conclusions of law concerning this claim, and his third and fifth assignments of error challenge the dismissal of the claim without an evidentiary hearing. We are not persuaded.

### A. No jurisdiction to entertain Hill's non-Atkins claim.

{¶32} By the terms of the postconviction statute, "the violation upon which the petitioner relies to establish his right to relief must be of constitutional dimension."[29] Hill did not specify the constitutional fundament for his alternative claim. But the claim is expressly alternative to, and thus not predicated upon, the constitutional principle declared in *Atkins* that executing the mentally retarded violates the Eighth Amendment's proscription against cruel and unusual punishment.

{¶33} Like his *Atkins* claim, Hill advanced his non-*Atkins* claim in his third postconviction petition and well after the prescribed time. Hill failed to demonstrate either that he had been unavoidably prevented from discovering the facts upon which his non-*Atkins* claim depended, or that the claim was predicated upon a new, retrospectively applicable federal or state right recognized by the United States Supreme Court since the time for filing the claim expired. Thus, because Hill's non-

---

[29] *State v. Powell* (1993), 90 Ohio App.3d 260, 264, 629 N.E.2d 13; see R.C. 2953.21(A)(1)(a).

*Atkins* claim did not satisfy either R.C. 2953.21's time restrictions or R.C. 2953.23's jurisdictional requirements, the common pleas court had no jurisdiction to entertain the claim, and the claim was subject to dismissal[30] without an evidentiary hearing.[31] We, therefore, overrule the third and fifth assignments of error to the extent of their challenge to the dismissal of that claim without a hearing.

### B. No duty to make findings of fact and conclusions of law

{¶34} In his first assignment of error, Hill contends that the common pleas court erred in failing to make and file findings of fact and conclusions of law concerning his non-*Atkins* claim. In his second assignment of error, he contends that the court erred in failing to "address" the claim. Our conclusion that the common pleas court had no jurisdiction to entertain Hill's non-*Atkins* claim is dispositive of these challenges.

{¶35} R.C. 2953.21(G) requires a common pleas court to journalize findings of fact and conclusions of law when it denies a petition for postconviction relief. But when a court has no jurisdiction to entertain a late or successive petition, the court's disposition of the petition need not include findings of fact and conclusions of law.[32]

{¶36} Hill's non-*Atkins* claim did not satisfy either R.C. 2953.21's time restrictions or R.C. 2953.23's jurisdictional requirements. Therefore, the common pleas court had no jurisdiction to "address" the claim on its merits. And R.C. 2953.21(G) did not require the court to journalize findings of fact and conclusions of law concerning the claim.

{¶37} Nevertheless, the court below made and filed findings of fact and conclusions of law. In its findings of fact and conclusions of law, the court "overruled"

---

[30] See R.C. 2953.21(C), 2953.23(A), and 2953.23(B).
[31] R.C. 2953.21(C) and 2953.21(E).
[32] See *State ex rel. Carroll v. Corrigan* (1999), 84 Ohio St.3d 529, 705 N.E.2d 1330; *State v. Byrd* (2001), 145 Ohio App.3d 318, 762 N.E.2d 1043.

Hill's "petition[] and amended petition[]" because Hill had "failed to meet the statutory standards for an untimely and successive petition" and had "failed to demonstrate that he is mentally retarded under the standards set forth in *State v. Lott.*" Then, by separate entry, and "for the reasons set forth in" its findings of fact and conclusions of law, the court "dismissed" "the [p]etition." Thus, the court must be said to have "address[ed]" (albeit other than on the merits) Hill's non-*Atkins* claim.

{¶38} Accordingly, we overrule the first assignment of error, because R.C. 2953.21(G) did not require the court to journalize findings of fact and conclusions of law concerning Hill's non-*Atkins* claim. And we overrule the second assignment of error because the common pleas court had no jurisdiction to "address" the claim on its merits, and because the court, in fact, "address[ed]" the claim in its findings of fact and conclusions of law and, by reference, in its entry dismissing Hill's petition.

### III. Conclusion

To summarize, the common pleas court had no jurisdiction to entertain Hill's late and successive postconviction *Atkins* claim because Hill failed to satisfy the R.C. 2953.23 jurisdictional requirement of outcome-determinative constitutional error in the imposition of his death sentence. Therefore, the petition was subject to dismissal without an evidentiary hearing.

The court also had no jurisdiction to entertain Hill's late and successive non-*Atkins* claim because Hill failed to satisfy the R.C. 2953.23 jurisdictional requirement of demonstrating either that he had been unavoidably prevented from discovering the facts upon which the claim depended, or that the claim was predicated upon a new, retrospectively applicable federal or state right recognized by the United States Supreme Court since the time for filing the claim expired. Therefore, the claim was

15

subject to dismissal without an evidentiary hearing and without findings of fact and conclusions of law.

Accordingly, we affirm the judgment of the common pleas court.

Judgment affirmed.

**DINKELACKER, P.J., SUNDERMANN** and **CUNNINGHAM, JJ.**


Please Note:

The court has recorded its own entry on the date of the release of this decision.